UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

Plaintiff,

v. Case No. 24-CR-039

ANGEL VELAZQUEZ BRAVO,

Defendant.

# PLEA AGREEMENT

1. The United States of America, by its attorney, Mario F. Gonzales, Assistant United States Attorneys for the Eastern District of Wisconsin, and the defendant, Angel Velazquez-Bravo, individually and by his attorney Jason Ronis, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

## CHARGES

2. The defendant has been charged in an indictment with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).

3. The defendant has read and fully understands the charge contained in the indictment. He fully understands the nature and elements of the crime with which he has been charged, and the charges and the terms and conditions of the plea agreement have been fully explained to him by his attorney.

4. The defendant voluntarily agrees to enter a plea of guilty to the indictment which is set forth in full as follows:

**COUNT ONE**

**THE GRAND JURY CHARGES THAT:**

Beginning on or about September 2020 and continuing through February 27, 2024, in the Eastern District of Wisconsin, and elsewhere,

**ANGEL VELAZQUEZ-BRAVO,**

did knowingly conspire and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956(h), to wit:

(a) to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is drug trafficking, with the intent to promote the carrying on of specified unlawful activity, that is drug trafficking, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of Title 18, United States Code, Section 1956(a)(l)(A)(i); and

(b) to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, drug trafficking, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while

conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(l)(B)(i); and

(c) to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

(d) to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, drug trafficking, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

In violation of Title 18, United States Code, Section 1956(h).

5. The defendant acknowledges, understands and agrees that he is, in fact, guilty of the offense described in paragraph 4. The parties understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. See Attachment A.

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries the following maximum term of imprisonment and fine Count One: twenty years' imprisonment and a $500,000 fine. The count also carries a maximum of three years of supervised release, and a mandatory special assessment of $100.

8. The defendant acknowledges, understands, and agrees that he has discussed the relevant statutes as well as the applicable sentencing guidelines with his attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge in the indictment, conspiracy to commit money laundering, the government must prove each of the following elements beyond a reasonable doubt:

> First, that two or more persons agreed to try to accomplish a common and unlawful plan to violate section 1956, money laundering; and,
> Second, the defendant knew about the plan's unlawful purpose and voluntarily joined in it.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that his attorney has discussed with and explained to him the potentially applicable sentencing guidelines provisions to the defendant's satisfaction.

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

16. The parties agree to recommend to the sentencing court that the relevant conduct attributable to the defendant is laundering between $3,500,000 and $9,500,000 in unlawful proceeds.

**Base Offense Level**

17. The parties will recommend to the sentencing court that the applicable base offense level for the offense charged in the indictment is 28 under Sentencing Guidelines Manual §2S1.1(a)(2), (b)(2)(B).

**Specific Offense Characteristics**

18. The parties agree to recommend to the sentencing court that the applicable base offense level be reduced by two levels pursuant Sentencing Guidelines Manual § 4C1.1. because the defendant has zero criminal history points.

19. The parties jointly agree that the application of U.S.S.G. § 2S.1.(b)(1) may be inappropriate based on the current factual basis, in the event it is applied the parties may request a larger mitigating role adjustment.

**Role in the Offense**

20. Pursuant to Sentencing Guidelines Manual § 3B1.2, the acknowledge and understand that the defense will recommend to the sentencing court that a two-level decrease, for a mitigating role in the offense, as the defendant was a minor participant in the underlying conduct that created the funds laundered. The government agrees to make no recommendation regarding the defendant's role in the offense; however, the government will advise the sentencing court with regard to any facts or law relevant to this adjustment

**Acceptance of Responsibility**

21. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of his intention to enter a plea of guilty.

## Sentencing Recommendations

22. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process.

23. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

## Court's Determinations at Sentencing

24. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

25. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

**FINANCIAL MATTERS**

26. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

27. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form.

**Special Assessment**

28. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

29. The defendant, by entering into this agreement, further agrees to fully and completely cooperate with the government in its investigation of this and related matters, and to testify truthfully and completely before the grand jury and at any subsequent trials or

proceedings, if asked to do so. The government agrees to advise the sentencing judge of the nature and extent of the defendant's cooperation. The parties acknowledge, understand and agree that if the defendant provides substantial assistance to the government in the investigation or prosecution of others, the government, in its discretion, may recommend a downward departure from: (a) the applicable sentencing guideline range; (b) any applicable statutory mandatory minimum; or (c) both. The defendant acknowledges and understands that the court will make its own determination regarding the appropriateness and extent to which such cooperation should affect the sentence.

## DEFENDANT'S WAIVER OF RIGHTS

30. In entering this agreement, the defendant acknowledges and understands that he surrenders any claims he may have raised in any pretrial motion, as well as certain rights which include the following:

a. If the defendant persisted in a plea of not guilty to the charges against him, he would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying on

to obtain a conviction and he would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on his own behalf. The defendant would be entitled to compulsory process to call witnesses.

e. At such trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify on his own behalf.

31. The defendant acknowledges and understands that by pleading guilty he is waiving all the rights set forth above. The defendant further acknowledges the fact that his attorney has explained these rights to him and the consequences of his waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

32. The defendant acknowledges and understands that he will be adjudicated guilty of the offense to which he will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

33. The defendant knowingly and voluntarily agrees to be deported and removed from the United States following the completion of any term of imprisonment in this matter. Removal and other immigration consequences are the subject of a separate proceeding, and the defendant understands that no one, including the defendant=s attorney or the sentencing court, can predict to a certainty the effect of the defendant=s conviction on the defendant=s immigration status. The defendant affirms that he wants to plead guilty regardless of the immigration consequences.

34. The defendant knowingly and voluntarily waives all claims he may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

38. The defendant acknowledges and understands if he violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and voluntarily waives any defense based on the applicable statute of limitations for any charges filed

against the defendant as a result of his breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing.

**VOLUNTARINESS OF DEFENDANT'S PLEA**

39. The defendant acknowledges, understands, and agrees that he will plead guilty freely and voluntarily because he is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

**ACKNOWLEDGMENTS**

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney, and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 06/17/2026

ANGEL VELAZQUEZ-BRAVO
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 06-17-2026

JASON RONIS
Attorney for Defendant

For the United States of America:

Date: 6-19-26

MARIO F. GONZALES
Assistant United States Attorney

## Attachment A

The parties understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt.

During the period alleged in the indictment, a network of individuals operating in the United States and Mexico was engaged in arranging the bulk transfer and laundering of United States currency. Persons operating within this network collected large amounts of cash in cities throughout the United States and arranged for those funds to be transferred to accounts outside the United States, including accounts in Mexico. The Government would prove that the funds involved in the transactions represented proceeds of unlawful activity.

Individuals acting as money brokers or intermediaries would arrange cash pickup contracts with receivers in various U.S. cities. A typical contract involved the offer of a cash pickup at a specific location for a percentage commission. To verify the identity of counterparties and reduce the risk of law enforcement interdiction or theft, brokers and receivers used identification protocols, including code names and dollar-bill serial numbers to authenticate pickup meetings. Once cash was collected, funds were transferred overseas through wire transfers or cryptocurrency.

Angel Velazquez-Bravo is a Mexican national who, prior to his involvement in the conduct charged in this case, operated legitimate businesses in Mexico, including restaurants, food-service ventures, and activities in the medical-device and construction-materials sectors. Through these lawful operations, Mr. Velazquez-Bravo developed practical experience managing cash-intensive businesses in Mexico, where reliance on armored carriers or formal banking infrastructure is often impractical or cost-prohibitive. He became familiar with informal cash-management arrangements and the movement of funds through intermediaries, practices common among Mexican small-business owners seeking to avoid logistical and security risks associated with transporting bulk currency.

During the period beginning in or about September 2020 and continuing through approximately February 2024, Mr. Velazquez-Bravo participated in the arrangement of cash pickups and transfers involving funds that participants sought to move outside traditional financial channels. Mr. Velazquez-Bravo understood that the funds he was helping to transfer represented the proceeds of some form of unlawful activity. He understood that certain transactions were structured in a manner that concealed or obscured the source, ownership, or control of funds.

Mr. Velazquez-Bravo never handled narcotics and was not a participant in any drug distribution activity. His role was that of a financial intermediary, downstream from whatever activity generated the funds he helped move. Based on his background and experience managing cash outside formal financial channels in Mexico, Mr. Velazquez-Bravo understood that there were various reasons why individuals or businesses might seek informal or off-the-books money movement, including tax evasion, avoidance of reporting obligations, or other unlawful financial arrangements. While he knew the funds he helped transfer represented the proceeds of unlawful activity of some kind, his participation was in the financial mechanics of the scheme, not in any underlying criminal enterprise that generated the funds.

Law enforcement investigation, including the use of confidential sources, wiretap evidence, and financial records, established that Mr. Velazquez-Bravo was in contact with other money brokers operating in Mexico, and that together they coordinated arrangements involving cash pickups in the United States. Text message records, recorded meetings, and cryptocurrency and bank account records corroborate the defendant's participation in these financial transactions. In total, Mr. Velazquez-Bravo was involved in brokering transactions through which funds, the proceeds of unlawful activity, were collected in the United States and transferred to accounts in Mexico.

The relevant conduct attributable to the defendant, as agreed by the parties, involves transactions in which between $3,500,000 and $9,500,000 in funds representing the proceeds of unlawful activity were transferred.

The parties agree that the defendant admits only that he knew the funds represented the proceeds of some form of unlawful activity. The defendant does not admit, and this factual basis does not establish, that he knew the funds were proceeds of narcotics trafficking, firearms trafficking, or any other particular specified unlawful activity.

The defendant admits that these facts are true and correct and that they establish his guilt beyond a reasonable doubt of the offense charged in the indictment. This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.